UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE TORCH LIQUIDATING TRUST BY AND THROUGH BRIDGE ASSOCIATES, LLC AS TRUSTEE | CIVIL ACTION |
| VERSUS | NO. 07-133 |
| LYLE STOCKSTILL, LANA J. HINGLE STOCKSTILL, ANDREW L. MICHEL, R. JERE SHOPF, KEN WALLACE, CURTIS LEMONS, ROBERT E. FULTON AND XL SPECIALTY INSURANCE COMPANY | SECTION: "T" (1) |

**ORDER AND REASONS**

Before the Court are Motions to Dismiss filed by all Defendants. Rec. Docs. 40, 42.[1] Plaintiff filed an Opposition. Rec. Doc. 57. The Motions came for hearing with oral argument on January 23, 2008, and were taken under submission. Subsequent to the hearing, Plaintiff filed a Motion for Leave to File a Surreply, Rec. Doc. 69, which the Court granted. Defendants were given time to respond and timely did so. Rec. Docs. 74, 77. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence is fully advised in the premises and ready to rule.

**I.   BACKGROUND**

On January 7, 2005, Torch Offshore, Inc, Torch Offshore, LLC, and Torch Express, LLC (collectively, "Torch") filed for Chapter 11 bankruptcy.[2] The Chapter 11 plan was approved and confirmed on April 28, 2006. This action followed on January 2, 2007, by The Torch Liquidating Trust by and through Bridge Associates, LLC as trustee (hereinafter, "Bridge Associates") alleging

---

[1] The individual director Defendants filed the Motion to Dismiss which is adopted by Defendant, XL Specialty Insurance Company. *See* Rec. Doc. 42.

[2] Torch operated a fleet of vessels specializing in underwater construction, the laying of submerged pipeline and diver support for the offshore oil and gas industry. At the time of the bankruptcy proceeding Torch operated ten vessels. Rec. Doc. 1 at paragraph 12.

that the individual officers and directors of Torch and their professional liability carrier, are liable to the creditors of Torch for breaching alleged fiduciary duties.  *See* Rec. Doc. 1 discussed in detail *infra.*

Defendants filed Motions to Dismiss the Original Complaint or for More Definite Statement which were heard with oral argument on September 20, 2007.  Rec. Docs. 7, 12.  The basis for the original Motions were the failure of the Complaint to meet the pleading standards for fraud under FRCP 9(b) and alternatively, for Plaintiff to provide a more definite statement of the claims asserted in accordance with FRCP 12(e).  *See* Memoranda attached to Rec. Docs. 7,12.  At oral argument on these motions, Plaintiff's counsel conceded his clients are not making fraud allegations and Defendants' Motions were denied.  Rec. Doc. 37.

In addition to the Motions to Dismiss, the Court also heard Plaintiff's Motion to Amend.  The Motion was granted and the Complaint was amended on September 20, 2007.  See Rec. Docs. 37, 38.  Defendants' instant Motions followed requesting that the Amended Complaint be dismissed for failure to state a claim in accordance with FRCP 12(b)(6).

The Original Complaint was brought by Bridge Associates, LLC "solely in its capacity as the Plan Administrator and the Trustee and not individually."  Rec. Doc. 1 at paragraph 2.  The Original Complaint alleges that during the time Torch was in both the zone of insolvency and was actually insolvent, the directors and/or officers of Torch owed a "fiduciary duty of the highest degree of care and loyalty, requiring the individual defendants...to act toward the unsecured creditors with scrupulous good faith and candor."  Rec. Doc. 1 at paragraph 25.  The individual defendants are alleged to have breached their duty of "scrupulous good faith and candor in their dealings with the unsecured creditors by: (1) inflating the estimated fair market value of the Torch fleet in order to

portray publically that it was solvent, Rec. Doc. 1 at paragraph 27; (2) deferring payment to unsecured creditors while at the same time entering into an intensive campaign to mislead Torch's unsecured creditors as to its true financial condition and to cajole the unsecured creditors to continue to supply goods and services, Rec. Doc. 1 at paragraph 28; and further, (3) breached their fiduciary duty to the creditors by: (a) failing to disclose the "true financial" situation of Torch; (b) failing to promptly admit that the delivery of the vessel the MIDNIGHT EXPRESS would be delayed, despite that such delay "would probably destroy the company," Rec. Doc. 1 at paragraphs 29, 30; and (c) orchestrated a "public relations campaign" to "obscure and minimize the market impact" of the financial data released to the public. Rec. Doc. 1 at paragraphs 31-36.

In addition to these allegations, the Original Complaint alleges that, in anticipation of the Chapter 11 proceedings, the individual defendants worked out debtor-in-possession financing ("DIP Loan") to maintain operations post-bankruptcy filing and that in so doing, the individual defendants used inflated valuations of the Torch fleet which were accepted by the financial institutions and by the bankruptcy court. Rec. Doc. 1 at paragraphs 38-40. However, because the values were inflated, when the fleet was ultimately sold, it sold for 40% less than the values used to acquire the DIP Loan to the detriment of the creditors. Rec. Doc. 1 at paragraph 41.

The Amended Complaint changes the parties on whose behalf the Trust is suing and alleges that the Trust is acting for and on behalf of the creditors and shareholders of the three (3) Torch entities in the "nature of a derivative suit." Rec. Doc. 38 at paragraph 2 (d). In addition to the allegations for fiduciary breach made in the Original Complaint, the Amended Complaint adds the allegation that the individual defendants owed unsecured creditors and shareholders an "implied obligation to enter into contracts and perform them in good faith and with fair dealing." Rec. Doc. 38 at paragraph 26. With the exception of the difference pointed out in the two preceding sentences,

the allegations in the Original and Amended Complaint are identical in that they allege the same duties were owed to both the shareholders and creditors and re-allege the same allegations as those alleged in Original Complaint regarding the methods by which the individual defendants allegedly breached their alleged fiduciary duties. The Amended Complaint simply adds the shareholders as a party claimant into each paragraph. *See* and Compare Rec. Docs. 1 and 38 at paragraphs 28, 29, and 32.

Defendants argue that the Amended Complaint fails to state a claim because: (1) Plaintiff lacks standing to assert a derivative claim; (2) Delaware's Business Judgment Rule shields the Defendants from liability; (3) the exculpatory provisions in Torch's Certificate of Incorporation precludes actions against the Defendants concerning decisions and actions of the Defendants while serving Torch; (4) the creditors have no direct cause of action for breach of fiduciary duty against the Defendant directors of Torch; and (5) the Bankruptcy Court approved the insolvency administration of Torch, despite objections by the same creditors who seek to bring this action, and therefore, Bridge Associate's challenge to the DIP Loan and the subsequent asset sale are foreclosed by the doctrine of collateral estoppel. Rec. Doc. 40.

Plaintiff's Opposition counters: (1) it has standing to bring this action pursuant to the authority conferred upon it by the Bankruptcy Court; (2) the Business Judgment Rule is not applicable because there was "no business decision" taken by the Board of Directors relating to the complained of actions by Plaintiff; (3) the exculpatory provisions in Torch's Certificate of Incorporation does not and cannot abrogate the Defendants' fiduciary duty of loyalty to the corporation and does not apply to the creditors claims because they are not a party to the Certification of Incorporation's Charter Provision; and (4) the causes of action arise out of conduct relating to breaches of fiduciary duties occurring prior to the filing of the bankruptcy petition in

January 2005 and therefore, Defendants collateral estoppel arguments are misplaced. Rec. Doc. 57.

## II.  LAW AND ANALYSIS

### A.  *Rule 12(B)(6) Standard.*

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir. 2002); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980). The Fifth Circuit has pointed out the proper inquiry on a Rule 12(b)(6) motion is "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowery*, 117 F.3d at 247, *citing* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969).

All parties agreed that Torch was incorporated pursuant to the laws of Delaware and therefore, Delaware law governs the substantive dispute. The parties also agree that federal procedural law applies.

### B.  *Standing.*

Plaintiff argues that the Bankruptcy Court's First Amended Joint Chapter 11 Plan of Reorganization gave the Trust the authority to "make a distribution to unsecured creditors of all funds derived from, among other things, the proceeds from recoveries of D & O claim." *See* Rec. Doc. 57 at p. 7. According to Plaintiff, D & O claims are defined as "any Claim arising prior to January 7, 2005 and recoveries against the Debtors' Directors, Officers and other principals which are related to Debtors' D & O Insurance." *See* Rec. Doc. 57 at p. 7. The Reorganization Plan was

5

confirmed by the Bankruptcy Court and in the Order, it provided:

> [A]ll [c]auses of action...and D & O Claims shall,...be transferred and retained by the Plan Administrator and Trustee.... Subject to the provisions of the Plan, the Plan Administrator and Trustee may prosecute, settle, and dismiss any and all Causes of Action or Avoidance of Claims as [he] sees fit without further review or approval of this Court.

The Court agrees that these provisions in the Reorganization Plan and the Bankruptcy Court's Order transfers to the Trust "any and all Causes of action" and D & O claims that the Trustee sees fit to bring without receiving the approval of the Bankruptcy Court. However, these provisions do not and cannot define whether a cause of action exists under the applicable law. Accordingly, the Court must examine the Original and Amended complaint to determine whether the causes of action asserted are the type that the creditors and/or shareholders can bring. If so, then the Trust, by virtue of the aforementioned provisions, has been transferred those rights. If the causes of action are not able to be brought by the creditors and/or shareholders, then the Trust, in turn, cannot bring that cause of action.

### *(i)     Original Complaint.*

Beginning with the claims raised in the original complaint, the Court finds that they do not state a cause of action that entitles the Plaintiff to relief. The Original Complaint alleges that the directors, upon Torch entering the zone of insolvency and at the time it was actually insolvent, owed fiduciary duties to the Torch's creditors and breached those duties by the actions described *supra.* However, under Delaware law, the creditors do not have this cause of action. In *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla,* 930 A.2d 92, 99 (Del. Supr. 2007), the Delaware Supreme Court was faced with this same issue and framed it as follows: "...as a matter of Delaware law, can the creditor of a corporation that is operating within the zone of

6

insolvency bring a direct action against its directors for an alleged breach of fiduciary duty?" The court answered this question negatively finding:

> [T]he need for providing directors with definitive guidance compels us to hold that **<u>no direct claim for breach of fiduciary duties may be asserted by the creditors of a solvent corporation that is operating in the zone of insolvency</u>**. When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: directors must continue to discharge their fiduciary duties to the corporation and its shareholders by exercising their business judgment in the best interests of the corporation for the benefit of its shareholder owners. Therefore, we hold the Court of Chancery properly concluded that Count II of the [the credtior's] Complaint fails to state a claim, as a matter of Delaware law, to the extent that it attempts to assert a direct claim for breach of fiduciary duty to a creditor while Clearwire was operating in the zone of insolvency. (Emphasis added).

*Gheewalla,* 930 A.2d at 101.

The *Gheewalla* court next examined whether the creditors of an insolvent corporation[3] have a direct claim for alleged breaches of fiduciary duties against the directors and/or officers and also answered that questioned negatively. In so finding, the court rejected prior Delaware precedent leaving open the possibility that Delaware law may allow direct claims by creditors against directors of an insolvent corporation finding that such a rule would create "uncertainty for directors who have a fiduciary duty to exercise their business judgment in the best interest of the insolvent corporation." *Gheewalla,* 930 A. 2d at 103. The court stated:

> To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those

---

[3] Under Delaware law, insolvency means insolvency in fact rather than insolvency due to a statutory filing in defining insolvency for purposes of determining when a fiduciary duty to creditors arises. *Geyer v. Ingersoll Publications Co.* 621 A.2d 784, 787 (Del.Ch. 1992). A Corporation is insolvent if the value of its assets has sunk below the amount of its debts. *Id.* at 788 (citations omitted). *See also Blackmore Partners, L.P. v. Link Energy LLC*, 2005 WL 2709639, at *6 (Del.Ch. Oct. 14, 2005)(Insolvency in fact occurs at the moment when the entity "has liabilities in excess of a reasonable market value of assets held.)

> directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors. Directors of insolvent corporations must retain the freedom to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation. Accordingly, we hold that individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate directors. Creditors may nonetheless protect their interest by bringing derivative claims on behalf of the insolvent corporation or any other direct nonfiduciary claim, as discussed earlier in this opinion, that may be available for individual creditors. (Citations Omitted)

*Gheewalla,* 930 A.2d at 103.

The causes of action alleged in the Original Complaint are for proposed breaches of fiduciary duties brought **solely** on behalf of Torch's creditors pursuant to the authority given the Trust by the Bankruptcy Court. Under *Gheewalla*, the creditors are prohibited from bringing the direct claims for any breach of fiduciary duties by the officers and/or directors as alleged herein and therefore, the Original Complaint brought solely on the creditors behalf is dismissed for failure to state a claim under FRCP 12(b)(6). The Court does not address any shareholder cause of action at this time because such is not alleged in the Original Compliant.

### ii. *Amended Complaint*.

As stated previously, the Amended Complaint adds the shareholders to all the causes of action raised in the Original Complaint as well as asserts that the Trust is "acting for and on behalf of the creditors and shareholders of the three Torch entities." Rec. Doc. 38 at paragraph 1. The Amended Complaint further alleges that this "matter is in the nature of a derivative suit in that plaintiff sues on behalf of the shareholders and creditors alike of the Torch entities." Rec. Doc. 38 at paragraph 2(d). The Court first discusses whether the creditors have a cause of action under the allegations pled then turns to the shareholders.

In response to Defendants arguments that it lacks standing, even as pled in the Amended Complaint, Plaintiff argues that *Gheewalla* unambiguously holds that when the corporation enters the zone of insolvency and/or is in fact insolvent, fiduciary duties are owed to the creditors that can be brought via a derivative suit. This reading of *Gheewalla* is incorrect. As stated *supra,* the *Gheewalla* court found that when a corporation is in fact insolvent, the creditors have standing to maintain a derivative claim against the directors **on behalf of the corporation for breaches of fiduciary duties**. *Gheewalla*, 930 A. 2d 101-102. *Gheewalla* did not create a cause of action or a new claim that the creditors are owed fiduciary duties at any point by the corporation; rather *Gheewalla* provided only that once the corporation is insolvent the right or standing to bring breach of fiduciary duty claims on behalf of the corporation transfer to the creditors. *Gheewalla,* 930 A. 2d at 102 (Explaining the equitable considerations give creditors standing to pursue derivative claims against the directors of an insolvent corporation and that individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent).

The issue the Court has with the Amended Complaint is that it does not allege that the creditors are bringing the derivative action on behalf of the corporation, but rather states that the Trust is "entitled to recover damages from the defendants herein on behalf of the Torch creditors and shareholders." *See* Rec. Doc. 38 at pp. To this reviewer, the allegations in the Amended Complaint continue to allege direct claims by the creditors for breaches of alleged fiduciary duties owed to them rather than breaches by the directors of the fiduciary duties owed to the corporation itself while operating in the zone of insolvency or while insolvent. For instance, Paragraph 26 of the Amended Complaint provides "...Torch came to owe ordinary creditors... a fiduciary duty of the highest degree of care and loyalty...requiring the directors and officers ...to act toward the unsecured creditors with

9

scrupulous good faith and candor." Rec. Doc. 38 at paragraph 26. Further, Paragraph 27 describes breaches by the Defendants of scrupulous good faith and candor in the dealings with the unsecured creditors and their shareholders and Paragraph 28 describes breaches of candor owed to the unsecured creditors and shareholders for allegedly inflating fair market value of Torch's fleet. Rec. Doc. 38 at paragraphs 27, 28. Paragraph 29 alleges breaches of duty of candor with Torch's creditors by deciding to defer paying unsecured creditors to the maximum extent possible and Paragraph 32 alleges directors and officers failure to disclose true financial straights violated fiduciary duty of candor to Torch Creditors and shareholders. The *Gheewalla* court was specific in its findings that such direct claims as these by creditors are not actionable. The court stated:

> While shareholders rely on directors acting as fiduciaries to protect their interests, creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights. Delaware courts have traditionally been reluctant to expand existing fiduciary duties. Accordingly, "the general rule is that directors do not owe creditors duties beyond the relevant contractual terms. [The Creditor] argues that when a corporation is in the zone of insolvency, this Court should recognize a new direct right for creditors to challenge directors' exercise of business judgments as breaches of the fiduciary duties owed to them.

The *Gheewalla* court went on to reject the new cause of action giving creditors a direct right to challenge director's exercise of business judgment as breaches of fiduciary duties when the corporation is operating in the zone of insolvency or is in fact insolvent as follows:

> Delaware corporate law provides for a separation of control and ownership. The directors of Delaware corporations have "the legal responsibility to manage the business of a corporation for the benefit of its shareholders owners." Accordingly, fiduciary duties are imposed upon the directors to regulate their conduct when they perform that function. Although the fiduciary duties of the directors of a Delaware corporation are unremitting: the exact cause of conduct that must be charted to properly discharge that responsibility will

10

> change in the specific context of the action the director is taking with regard to either the corporation or its shareholders. This Court has endeavored to provide the directors with clear signal beacons and brightly lined channel markers as they navigate with due care, good faith, a loyalty on behalf of a Delaware corporation and its shareholders. This Court has also endeavored to mark the safe harbors clearly.
>
> In this case, the need for providing directors with definitive guidance compels us to hold that **no direct claim for breach of fiduciary duties may be asserted by the creditors of a solvent corporation that is operating in the zone of insolvency**. **When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: directors must continue to discharge their fiduciary duties to the corporation and its shareholders by exercising their business judgment in the best interests of the corporation for the benefit of its shareholder owners.** (Citations omitted) (Emphasis added)

*Gheewalla,* 930 A. 2d at 99-101.

Accordingly, Delaware law does not allow for the breach of fiduciary duty claims asserted by the creditors in the Amended Complaint on their own behalf regardless of insolvency. Plaintiff's arguments and its Amended Complaint blurs the distinction made by the *Gheewalla* court between creditors and shareholders. The creditors, and therefore the Trust on its behalf, do have standing to assert any derivative claim on behalf of the corporation. However, neither the creditors nor the Trust have standing to assert the claims raised in the Amended Complaint that allege direct breach of fiduciary duty claims by the directors owed to the creditors. Such direct claims do not exist under the current state of Delaware law.[4]

---

[4] The Court is cognizant that creditors may assert direct non-fiduciary causes of action based upon contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights. *Gheewalla,* 930 A. 2d at 101. However, the Court need not decide if the Amended Complaint states such causes of action because prior case law is explicit that Litigation Trusts such as Plaintiff do not have standing to pursue the direct claims of creditors. *See Trenwick America Litigation Trust v. Ernst & Young, L.L.P.* 906 A.2d 168, 191 (Del.Ch. 2006)(federal bankruptcy law is clear that litigation trusts do not have standing to pursue the direct claims of creditors) *citing Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).

Accordingly, the Court finds that the Amended Complaint fails to state a cause of action by the creditors for breaches of fiduciary duties during Torch's zone of insolvency or when Torch was in fact insolvent[5] and therefore, the Trust cannot raise such claims against the directors on behalf of the creditors.  The Motion to Dismiss is granted as the allegations in the Amended Complaint relating to the creditors for failure to state a claim pursuant to FRCP 12(b)(6).

C.     *Business Judgment Rule.*

Even if Delaware law established the cause of action alleged by the creditors, their claims would still be subject to dismissal under Delaware's business judgment rule.  It is an elementary rule of corporation law that in the absence of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible to the corporation for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith.  *Gagliardi v. TriFoods Intern., Inc*.  683 A.2d 1049, 1052 (Del. Ch.1996).  There is a theoretical exception to this general statement that holds that some decisions may be so "egregious" that liability for losses they cause may follow even in the absence of proof of conflict of interest or improper motivation.  *Gagliardi,* 683 A.2d at 1052.  However, the exception granting relief in the absence of a claimed conflict or improper motivation is not used often.  *Gagliardi,* 683 A. 2d at 1052.  Thus, to allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary acting in a good faith pursuit of corporate purposes, does not state a claim for relief against that fiduciary no matter how foolish the investment may appear in retrospect.  *Gagliardi,* 683 A. 2d at 1052.

---

[5]The Court's analysis assumes the facts of Plaintiff' Amended Complaint as true regarding the insolvency issues for purposes of this motion only.

The business judgment rule exists to ensure that directors and managers acting in good faith may pursue risky strategies that seem to promise great profit. If the mere fact that a strategy turned out poorly is in itself sufficient to create an inference that the directors who approved it breached their fiduciary duties, the business judgment rule will be denuded of much of its utility. *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.* 906 A.2d 168, 193 (Del.Ch. 2006). Because the business judgment rule serves an important purpose, the law requires that a plaintiff plead facts supporting an inference that directors committed a cognizable breach of duty. *Trenwick,* 906 A. 2d at 194. To prevent the rule's application, a Plaintiff may not simply allege cursory allegations that a majority independent board undertook a business strategy that was "all consuming and foolhardy" and turned out badly and thereby seek to have the court infer that the later failure resulted from a grossly deficient level of effort or from disloyal motives. *Trenwick*, 906 A.2d at 194. The business judgment rule states that the business decisions of disinterested directors will not be disturbed if they can be attributed to any rational business purpose. *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del.1971).

The purpose of the rule is to prevent courts from injecting themselves into a management role for which they are neither trained nor competent and encourages others to assume entrepreneurial and risk-taking activities by protecting them against personal liability when they have performed in good faith and with due care, however unfortunate the consequence. *Continuing Creditors' Committee of Star Telecommunications, Inc. v. Edgecomb*, 385 F.Supp.2d 449, 458 (D. Del. 2004).

Plaintiff argues that the rule has no application to allegations by both the shareholders and the creditors for several reasons. First, Plaintiff alleges that it is inappropriate for the Court to

review the application of the rule to the facts in a Motion to Dismiss. Rec. Doc. 57 at p. 11. Second, Plaintiff alleges that the Defendants have not demonstrated "[b]oard action," "[b]usiness judgment or [d]eliberate decision" triggering the rule. Rec. Doc. 57 at p. 13.[6] Third, Plaintiff argues that the rule does not protect directors in cases alleging failure to make true and complete disclosure. Fourth, Plaintiff alleges that when the fiduciary duty is owed to the creditor during the zone of insolvency and during insolvency, a different rule or standard must be applied. Fifth, Plaintiff alleges that when self-dealing or bad faith is at issue the rule is inapplicable. Rec. Doc. 57 at pp. 14-15. On this argument, Plaintiff points out that it did not specifically allege self-dealing in the Amended Complaint yet they can amend to add these allegations (as well as bad faith specifically). Rec. Doc. 69 at p. 2.

The Court addresses each of these arguments below and, after reviewing all of the allegations in the Amended Complaint in a light most favorable to the Plaintiff and accepting all allegations raised therein as true for purposes of this Motion, rejects Plaintiff's arguments that the Business Judgment Rule does not apply.

First, there is not any prohibition against this Court ruling on a FRCP 12(b)(6) Motion to Dismiss that the rule is applicable to the facts and therefore, finding that the Amended Complaint requires dismissal. *See Gheewalla,* 930 A. 2d at 98-99 (providing that to withstand Defendant's Motion to Dismiss, Plaintiff is required to demonstrate that the breach of fiduciary duty claims are cognizable under Delaware law); *Trenwick*, 906 A. 2d 168 (granting Motion to Dismiss based upon, *inter alia*, the business judgement rule's application); *King v. Douglas,* 973 F. Supp. 707 (S. D. Tex.

---

[6]Plaintiff argues that because the entire board ( or a quorum of it) did not make the alleged challenged actions are not protected by the Business Judgment Rule. Rec. Doc. 57 at p. 13. As such, Plaintiff argues that the "spontaneous actions of the one or more rogue directors" is not a case for application of the rule.

14

1996)(granting Motion to Dismiss after finding that Delaware's business judgment rule applied to the facts of the mater and precluded claims made by the plaintiffs).  Accordingly, the Court can dismiss the Amended Complaint if it finds the rule applicable.

Second, Plaintiff's arguments in their briefing contradicts the allegations made in the Amended Complaint.  In its briefs, Plaintiff argues that the rule is inapplicable because there was not any decision of the directors and officers relating to the actions challenged; yet, the Amended Complaint specifically alleges that it was the decisions of Torch (through its officers and directors) to undertake significant debt and expand its fleet and take other action which ultimately proved unsuccessful in keeping the corporation solvent.  *See* Rec. Doc. 38 at paragraphs 16-24.  As pointed out *supra,* once the alleged zone of insolvency and in fact insolvency began (assuming those allegations as true) Plaintiff alleges that the directors and officers began to owe duties to the creditors and began breaching those same duties by their collective actions.  *See* Rec. Doc. 38.  The Amended Complaint does not break apart or separate the breaches and the actions attributable to those breaches by individual Defendant, but rather alleges actions by all the Defendants, collectively, that turned out to be poorly made.  In the absence of bad faith or self dealing, the mere fact that a strategy turned out poorly is in itself insufficient to create an inference that the directors who approved it breached their fiduciary duties.  *Trenwick,* 906 A.2d at 193.  Plaintiff cannot in its briefing attempt to read into the complaint allegations that were not pled nor change the argument once learning the opposing side's position.

Next, Plaintiff urges that the rule is inapplicable in cases dealing with the directors' failure to make disclosures to its shareholders citing the *In Re Anderson Clayton Shareholders Litigation*, 519 A. 2d 669, 675 (Del. Ch. Ct. 1986) case.  The facts in that case are not the same as here in that

15

*Anderson* case involved a failure to provide shareholders with appropriate and material information that they needed to make an informed and knowledgeable choice on a matter of fundamental corporate importance.  The court distinguished that type of case which relates to the directors' duty to the shareholders who are technically outside the corporation from decisions concerning the **management of business and affairs of the enterprise**.  *In Re Anderson,* 519 A. 2d at 666. (Emphasis added).  Because decisions dealing with the quality of, and the circumstances surrounding, disclosures are not inherently the kind which courts are ill suited to treat on the merits, the court found that the one of the underlying reasons for the great deference the business judgment rule carries was not present in that type of case.  *Id.*  This case does not deal with any of the same situations or facts in *Anderson* and therefore, that court's reasoning for rejecting application of the business judgment rule is not applicable to the case at hand.  This is a case challenging the management of Torch's business affairs pre-insolvency and leading up to the time bankruptcy was filed.  Accordingly, Plaintiff's argument that the rule does not apply to the facts is without merit.

Plaintiff's fourth argument that a different standard should apply is equally meritless.  *See Trenwick*, 906 A 2d at 196 FN 75 (stating that the business judgment rule protects the directors of solvent, barely solvent, and insolvent corporations, and that the creditors of an insolvent firm have no greater right to challenge a disinterested, good faith business decision than the stockholders of a solvent firm.)

Plaintiff's final argument is that it has adequately pled bad faith, self-dealing and other actions by the directors which preclude the application of the rule and if the Amended Complaint needs more factual allegations, it would be happy to amend.  To affirm its belief that self-dealing and bad faith occurred, Plaintiff's surreply urges that two of the directors received hefty salaries and

16

all of the directors received compensation for serving on the board. Rec. Doc. 69 at p.2. Further, Plaintiff alleges that the Amended Complaint is full of allegations of bad faith because it alleges that the Defendants failed to act in good faith in exercising their duty of candor. Rec. Doc, 69 at p. 2. Plaintiff argues that what is alleged as bad faith cannot, by definition, be good faith.

Assuming the allegations as true, Plaintiff still falls short. Receiving salaries and bonuses is not enough to show that a director is disinterested or lacked good faith in making the decisions that ultimately may be detrimental to the company. In *Trenwick,* the defendant directors received compensation after implementing a poor strategy that ended in the corporation's insolvency; however, the directors were shielded from the claims due to the business judgment rule. *Trenwick*, 906 A. 2d at 172. *See also In re E. F. Hutton Banking Practices Litigation, 634 F. Supp. 265, 270-272* (S.D.N.Y. 1986)(finding that allegations that the receipt of monthly summaries should have made board of directors aware of existence of illegal overdrafting scheme, that all directors benefited from wrongdoing in form of large bonuses tied to overall profitability of corporation, and that existence of other litigation created irreconcilable conflicts between directors' self-interest and their corporate obligations did not state with sufficient particularity a claim that the board was so self-interested or biased as to have been unable to exercise proper business judgment). Accordingly, the argument that by accepting monetary compensation for doing their job and as well as other benefits the Defendants engaged in self-dealing, is meritless.

As to the bad faith arguments, the Court initially notes that when the first Motion to Dismiss came for hearing, counsel for Plaintiff specifically indicated that they were not bringing any fraud or intentional conduct claims. Now, Plaintiff's theory has changed. Plaintiff argues that its theory has not changed because to prove bad faith, it does not have to prove intent. Rec. Doc. 69 at p. 2.

This is incorrect. Plaintiff must allege that scienter and/or an intent to deceive in order to establish the inapplicability of the business judgment rule's strong presumption. *See Stone ex rel. AmSouth Bancorporation v. Ritter* 911 A.2d 362, *370 (Del. Supr. 2006) (finding that where directors fail to act in the face of a known duty, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith). The Amended Complaint's conclusory allegations do not provide any facts or specifics about Defendants' intentional acts or omissions. The deficient allegations raised in the Amended Complaint coupled with counsels' affirmation that their clients are not alleging intentional acts, leads this Court to conclude that Plaintiff's argument relating to the inapplicability of the business judgment rule due to bad faith decisions by the directors are without merit.

Finally, the Court addresses the duty of loyalty claim. The Court first notes that the Amended Complaint did not specifically allege any claims for breach of the duty of loyalty. The arguments relating to those claims are addressed for the first time in Plaintiff's Opposition and are discussed by both sides in their replies and surreplies. However, the duty of good faith and the duty of loyalty are identical. *See Continuing Creditors' Committee of Star Telecommunications, Inc. v. Edgecomb*, 385 F.Supp.2d 449, 460 (D.Del. 2004) FN 9 *citing Nagy v. Bistricer*, 770 A.2d 43, 49 n. 2 (Del.N Ch. 2000). To allege a breach of the duty of loyalty based on actions or omissions of a board, the Plaintiff must "plead facts demonstrating that a majority of a board that approved the transaction in dispute was interested and/or lacked independence. *Continuing Creditors' Committee of Star Telecommunications, Inc.*, 385 F.Supp.2d at 460. Thus, Plaintiff's allegations of a breach of good faith are part and parcel of the duty of loyalty claim. Nevertheless, for the same reasons that the Court finds the Plaintiff falls short on the claims for breach of the duty of good faith, the Court

also finds that it falls short as to the duty of loyalty claims. *See Stone* 911 A.2dat 369-370.

For these reasons, the Trust is precluded from bringing this action on behalf of the shareholders. Additionally, and assuming *Gheewalla* does not preclude the creditors alleged cause of action, the Business Judgment Rule would also preclude any claim by the creditors for proposed breaches of fiduciary duties by the directors. As alleged in the Amended Complaint, the Torch directors and officers made a number of financial decisions leading up to the time the formal bankruptcy petition was filed that turned out to be poor. This Court will not question those management decisions when the Amended Complaint fails to allege that the directors and/or officers performed in bad faith and without due care. While the outcome of their decisions were unfortunate, the Court, bound by the Business Judgment Rule, cannot challenge the decision.

## III.  CONCLUSION

For the foregoing reasons the Court finds: (1) that the creditors do not have a direct cause of action for breach of fiduciary duties against the individual directors and/or officers and therefore the allegations in the Original Complaint are dismissed pursuant to FRCP 12(b)(6); (2) the creditors can bring a derivative action on behalf of the corporation but the Amended Complaint falls to allege anything other than direct claims by the creditors and as such, under *Gheewalla*, the Amended Complaint insofar as it relates to the creditors should be dismissed pursuant to FRCP 12(b)(6); (3) alternatively, and in the event the Amended Complaint does not state direct claims by the creditors for fiduciary duty breaches, the action brought on the creditors behalf is dismissed pursuant to FRCP 12(b)(6) in accordance with Delaware's business judgment rule; and (4) and claims brought on behalf of the shareholders are also dismissed pursuant to FRCP 12(b)(6) in accordance with Delaware's business judgment rule.

Accordingly and for the reasons state herein,

**IT IS ORDERED** that Defendants' Motions to Dismiss (Rec. Docs. 40, 42) are **GRANTED** and Defendants shall be dismissed from this action with prejudice.

New Orleans, Louisiana this 13th day of March, 2008.

_____
**UNITED STATES DISTRICT JUDGE
G. THOMAS PORTEOUS, JR.**